**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| CURTIS EUGENE WILDS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 1:12CV1106 |
| ) | |
| REUBEN YOUNG, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION AND ORDER**

**Auld, Magistrate Judge**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) On November 10, 1997, in the Superior Court of Davidson County, Petitioner was convicted after a capital trial by jury of first degree murder in case 96 CRS 19074. (Docket Entry 1 at 1 (¶¶ 1-6), 36-37.)[1] The jury found that mitigating circumstances outweighed aggravating circumstances and recommended a life without parole sentence. State v. Wilds, 133 N.C. App. 195, 197, 515 S.E.2d 466, 469 (1999). In accordance with the jury's recommendation, the trial court sentenced Petitioner to life imprisonment without the possibility of parole. See Wilds, 133 N.C. App. at 197, 515 S.E.2d at 469.

Petitioner appealed his convictions to the North Carolina Court of Appeals, and on May 18, 1999, that court affirmed Petitioner's conviction and sentence. Wilds, 133 N.C. App. at 209,

---

[1] For portions of the Petition lacking internal pagination, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

515 S.E.2d at 477.  Petitioner did not pursue that appeal any further.  (Docket Entry 1 at 2 (¶ 9(g)).)

On December 29, 2010, Petitioner filed a pro se motion for preparation of a stenographic trial transcript with the trial court (Docket Entry 4, Ex. 2), which that court denied on January 21, 2011 (id., Ex. 3).  On February 7, 2011, Petitioner filed a petition for writ of certiorari with the North Carolina Court of Appeals seeking review of the trial court's denial of his motion for a trial transcript.  (Id., Ex. 4.)  On February 18, 2011, that court denied the petition.  (Id., Ex. 6.)

On April 2, 2012, Petitioner filed a pro se motion for appropriate relief ("MAR") with the state trial court.  (Docket Entry 1 at 20-26; see also Docket Entry 4, Ex. 7 at 1 (indicating date filed).)  Along with his MAR, Petitioner filed five motions requesting evidentiary hearings on various issues.  (See Docket Entry 1 at 32, 58-59, 67-68, 79, 81, 85-87.)  The trial court denied the MAR and all five of his motions for evidentiary hearings by orders dated April 13, 2012.  (Docket Entry 4, Ex. 7.)  Petitioner then filed a pro se petition for a writ of certiorari with the North Carolina Court of Appeals (Docket Entry 4, Ex. 8), which he dated as submitted on April 23, 2012 (id. at 6),[2] and which that court stamped as filed on April 30, 2012 (id. at 2).  The Court of Appeals denied that petition on May 15, 2012.  (Docket Entry 1 at 17.)  On May 29, 2012, Petitioner filed a pro se

---

[2] For portions of Respondent's memorandum in support of his motion to dismiss lacking internal pagination, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

certiorari petition with the North Carolina Supreme Court seeking review of the Court of Appeals' May 15, 2012 order, which that court dismissed on August 23, 2012.  State v. Wilds, No. 240P12, 2012 N.C. LEXIS 765 (N.C. Aug. 23, 2012).

Petitioner thereafter submitted his first § 2254 petition in this Court (Wilds v. North Carolina, 1:12CV1037, Docket Entry 1), which he dated as mailed on September 11, 2012 (id. at 14), and which the Court stamped as filed on September 17, 2012 (id. at 1). On September 24, 2012, the Court dismissed that petition without prejudice due to various pleading failures.  (Wilds v. North Carolina, 1:12CV1037, Docket Entry 2.)  Petitioner then filed the instant Petition, which he dated as mailed on September 11, 2012 (Docket Entry 1 at 15),[3] and which the Court stamped as filed on October 12, 2012 (id. at 1).  Respondent moved to dismiss the Petition on statute of limitation grounds.  (Docket Entry 3.) Petitioner subsequently filed two documents: (1) a "Motion for a Full Evidence Hearing on Attorney General Manipulation and Department of Correction Officer Wooten Committed [sic] Perjury, Mail Tampering and Obstruction of Justice as they are Corroborating together" (Docket Entry 6); and (2) an untitled document asking the Court to review his case and to appoint an attorney (Docket Entry 8).  The parties have consented to disposition of this case by a United States Magistrate Judge.  (Docket Entry 9.)

---

[3] The September 11, 2012 submission date listed on page 15 of the Petition in this case could not be correct, as it was filed in response to (and thus, after) the Court's September 24, 2012 order dismissing his earlier petition without prejudice for pleading defects.

-3-

**Petitioner's Claims**

The Court's order dismissing Petitioner's first § 2254 petition in this Court instructed Petitioner as follows:

> Petitioner did not properly complete the forms: Petitioner is required to specify his grounds for relief *and* set out the facts which Petitioner claims support each ground. See Rules Governing Section 2254 Cases 2(c). The Court will not search for facts in briefs or other documents. The facts must be set out in paragraph 12 of the § 2254 forms. Id. Petitioner cannot simply say "See Attached Pages."

(Wilds v. North Carolina, 1:12CV1037, Docket Entry 2 at 2, ¶ 4.) Despite this admonition, in the instant Petition, Petitioner again fails to set out any of the specific grounds for relief in the body of the Petition other than the phrase, "insufficient evidence [b]y the State" (Docket Entry 1 at 5), and the non-specific assertion that "[t]he State used incriminating statements against me" (id. at 8). Beyond these two assertions, Petitioner merely requests the Court to "See attached Pages of Facts" (id. at 7, 11), and has attached copies of his various filings in the state courts (id. at 17-88, 94-103).

Respondent asserts that he "combed through" the Petition's attachments and "discern[ed] . . . the following . . . grounds for relief: that there was insufficient evidence to support his conviction for a variety of reasons; that the State violated his right to due process; that there is newly discovered evidence, because he discovered that his attorney, apparently his appellate attorney, "kept the transcript from [him]"; that his sentence was invalid because "the State Bureau of Investigation [('SBI')] found

-4-

[his] charge to be aggravated assault"; that his conviction was obtained based upon the unconstitutional failure of the State to disclose favorable evidence; that his conviction was obtained due to the ineffective assistance of trial and/or appellate counsel; that he was never read his Miranda rights; that the magistrate signed his arrest warrant after the probable cause hearing; that the SBI laboratory admitted to falsifying laboratory results in his case; that the SBI laboratory also admitted to covering up the falsification; that the criminal session of Davidson County did not ensure that he was safeguarded from improper testimony; that the trial court was derelict in its duties during jury selection; that there were inconsistencies in the trial testimony and pretrial statements of one of his children; that the trial testimony of the medical examiner proved Petitioner's theory that the victim was stabbed while he was trying to take the knife away from her; that the sheriff's deputies failed to take him before the magistrate after being arrested; that he was badgered into making incriminating statements during his interrogation; that he was denied his right to an attorney upon exercising that right during his interrogation; and that there were improprieties in the interviews of one or more of his children based upon their young age, immaturity, and failure to comprehend all of the questions that violated his constitutional rights. (Docket Entry 4 at 5-6.) After independent review, the Court adopts Respondent's summary of Petitioner's claims for purposes of the discussion that follows.

**Discussion**

Respondent moves to dismiss on the ground that the Petition was filed[4] outside of the one-year limitation period. 28 U.S.C. § 2244(d)(1). In order to assess Respondent's statute of limitation argument, the Court first must determine when Petitioner's one-year period to file his § 2254 Petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period begins to run from the latest of several potential starting dates:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[4] "In [Houston v. Lack, 487 U.S. 266 (1988)], the Supreme Court held that a *pro se* prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." Morales-Rivera v. United States, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." Id. at 110-11 & n.3. In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context. See Allen v. Mitchell, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. Cf. United States v. Torres, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court). We take no position on that question here."); but see Smith v. Woodard, 57 F. App'x 167, 167 n.* (4th Cir. 2003) (implying that Houston's rule governed filing date of § 2254 petition); Ostrander v. Angelone, 43 F. App'x 684, 684-85 (4th Cir. 2002) (same). Because the difference between the date Petitioner signed his Petition (i.e., the earliest date he could have given it to prison officials for mailing) and the date the Clerk received it would not affect disposition of the timeliness issue, the Court need not consider this matter further.

-6-

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

The record does not reveal any basis for concluding that subparagraphs (B), (C), or (D) of § 2244(d)(1) apply in this case.[5] As a result, Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of

---

[5] In his brief in support of the instant Motion to Dismiss, Respondent anticipated a potential argument by Petitioner that his "newly discovered evidence" regarding (1) his appellate attorney's alleged withholding of a transcript; and (2) the SBI laboratory's alleged falsification of evidence and coverup of same, would entitle him to a delayed commencement of the statute of limitations under 28 U.S.C. § 2244(d)(1)(D). (See Docket Entry 4 at 11-12.) However, even liberally construing Petitioner's pro se filings, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972), the Court does not find grounds for the application of subparagraph (D). Petitioner knew or should have known of the factual predicate of his transcript claim, i.e., that his appellate attorney withheld a transcript, at the time his appeal concluded in 1999. Moreover, with regard to Petitioner's allegations against the SBI, those conclusory allegations do not explain what evidence was falsified, how the evidence was falsified, or how or when Petitioner discovered the falsification. (See, e.g., Docket Entry 1 at 58-59, 67-68.) Under these circumstances, a delayed commencement of the statute of limitations under § 2244(d)(1)(D) does not apply. See Farabee v. Clarke, No. 2:12-cv-76, 2013 WL 1098098, at *3 (E.D. Va. Feb. 19, 2013) (unpublished) (finding subparagraph (D) inapplicable where petitioner's "threadbare" allegations failed to explain why factual predicate could not have been discovered earlier or provide any dates by which court could calculate limitations period) (quoting Allen v. Hancock, No. 1:11CV123-HSO-JMR, 2011 WL 7461993, at *2 (S.D. Miss. Nov. 9, 2011) (unpublished)); Norrid v. Quarterman, No. 4:06-CV-403-A, 2006 WL 2970439, at *1 (N.D. Tex. Oct. 16, 2006) (unpublished) (concluding that petitioner bears burden of establishing applicability of section 2244(d)(1)(D), including his due diligence, and that conclusory statements do not satisfy burden); Redmond v. Jackson, 295 F. Supp. 2d 767, 772 (E.D. Mich. 2003) (holding unsupported and conclusory arguments insufficient to warrant application of § 2244(d)(1)(D)); Frazier v. Rogerson, 248 F. Supp. 2d 825, 834 (N.D. Iowa 2003) (finding subparagraph (D) inapplicable where petitioner "never identifie[d] when or how he discovered his 'new evidence,'" and noting that petitioner's "contention that he could not have discovered it sooner with due diligence is unsupported and conclusory")

direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction ended.

As Respondent has asserted (Docket Entry 4 at 6-7), and Petitioner has not disputed (see Docket Entries dated Nov. 16, 2012, to the present), Petitioner's convictions became final on June 22, 1999, 35 days after the North Carolina Court of Appeals issued its May 18, 1999 opinion affirming Petitioner's conviction and sentence. See N.C. R. App. P. 32(b) (providing that, unless court orders otherwise, mandate issues 20 days after written opinion filed); N.C. R. App. P. 14(a) & 15(b) (allowing 15 days after issuance of mandate to file notice of appeal or petition for discretionary review); Saguilar v. Harkleroad, 348 F. Supp. 2d 595, 598-600 (M.D.N.C. 2004) (holding conviction final on direct review 35 days after Court of Appeals' opinion where no timely petition for discretionary review filed). The limitations period then ran for 365 days until it expired a year later on June 22, 2000, over 12 years before Petitioner brought this action under § 2254.

Petitioner did make certain state collateral filings, which generally toll the federal habeas deadline for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)," Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). Petitioner, however, did not make any collateral

-8-

Case 1:12-cv-01106-LPA   Document 10   Filed 04/18/13   Page 8 of 10

direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction ended.

As Respondent has asserted (Docket Entry 4 at 6-7), and Petitioner has not disputed (see Docket Entries dated Nov. 16, 2012, to the present), Petitioner's convictions became final on June 22, 1999, 35 days after the North Carolina Court of Appeals issued its May 18, 1999 opinion affirming Petitioner's conviction and sentence. See N.C. R. App. P. 32(b) (providing that, unless court orders otherwise, mandate issues 20 days after written opinion filed); N.C. R. App. P. 14(a) & 15(b) (allowing 15 days after issuance of mandate to file notice of appeal or petition for discretionary review); Saguilar v. Harkleroad, 348 F. Supp. 2d 595, 598-600 (M.D.N.C. 2004) (holding conviction final on direct review 35 days after Court of Appeals' opinion where no timely petition for discretionary review filed). The limitations period then ran for 365 days until it expired a year later on June 22, 2000, over 12 years before Petitioner brought this action under § 2254.

Petitioner did make certain state collateral filings, which generally toll the federal habeas deadline for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)," Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). Petitioner, however, did not make any collateral

-8-

Case 1:12-cv-01106-LPA   Document 10   Filed 04/18/13   Page 8 of 10

direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction ended.

As Respondent has asserted (Docket Entry 4 at 6-7), and Petitioner has not disputed (see Docket Entries dated Nov. 16, 2012, to the present), Petitioner's convictions became final on June 22, 1999, 35 days after the North Carolina Court of Appeals issued its May 18, 1999 opinion affirming Petitioner's conviction and sentence. See N.C. R. App. P. 32(b) (providing that, unless court orders otherwise, mandate issues 20 days after written opinion filed); N.C. R. App. P. 14(a) & 15(b) (allowing 15 days after issuance of mandate to file notice of appeal or petition for discretionary review); Saguilar v. Harkleroad, 348 F. Supp. 2d 595, 598-600 (M.D.N.C. 2004) (holding conviction final on direct review 35 days after Court of Appeals' opinion where no timely petition for discretionary review filed). The limitations period then ran for 365 days until it expired a year later on June 22, 2000, over 12 years before Petitioner brought this action under § 2254.

Petitioner did make certain state collateral filings, which generally toll the federal habeas deadline for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)," Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). Petitioner, however, did not make any collateral

filings in the state courts until April 2, 2012, more than 11 years after his time to file a federal habeas claim had already expired. State filings made after the federal limitations period has passed do not restart or revive the filing period. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000).

Finally, the Supreme Court has determined that the one-year limitation period is subject to equitable tolling, Holland v. Florida, 560 U.S. ___, ___, 130 S. Ct. 2549, 2562 (2010). Equitable tolling may apply when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)) (emphasis added).

Here, in the section of the § 2254 form petition asking for an explanation regarding the Petition's timeliness, Petitioner merely wrote, "My Case Was Filed on Direct appeal." (Docket Entry 1, ¶ 18.) The fact that Petitioner pursued a direct appeal is not relevant to the issue of equitable tolling, as the one-year period did not even begin to run until after Petitioner's direct appeal had concluded. Petitioner did not provide the Court with any explanation for his failure to file the Petition before the expiration of the one-year period, and the record does not provide any basis for equitable tolling.[6]

---

[6] In view of the Court's conclusion that the Petition is untimely, no basis exists to appoint counsel or to hold an evidentiary hearing, as requested by Petitioner (see Docket Entries 6, 8).

-9-

**IT IS THEREFORE ORDERED** that Respondent's Motion to Dismiss (Docket Entry 3) is **GRANTED,** that Petitioner's Motion for a Full Evidence Hearing (Docket Entry 6) is **DENIED,** that Petitioner's motion for appointment of counsel (Docket Entry 8) is **DENIED,** that the Petition (Docket Entry 1) is **DENIED,** and that this action be, and the same hereby is, **DISMISSED.** A Judgment will be entered contemporaneously with this Order.

                                        /s/ L. Patrick Auld
                                           **L. Patrick Auld**
                              **United States Magistrate Judge**

Date: April 18, 2013